# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTINA ANN HILDEBRANDT, | * |
| Plaintiff, | * |
| v. | * Civil No. TMD 17-1911 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | * |
| Defendant.[1] | * |

## MEMORANDUM OPINION GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR REMAND

Plaintiff Christina Ann Hildebrandt seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 14).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R.

---

[1] On April 17, 2018, Nancy A. Berryhill became the Acting Commissioner of Social Security. *See* 5 U.S.C. § 3346(a)(2); *Patterson v. Berryhill*, No. 2:18-cv-00193-DWA, slip op. at 2 (W.D. Pa. June 14, 2018).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 13) is **GRANTED**.

# I

## Background

Born in 1975, Plaintiff has a high-school education and previously worked as a nursing assistant and daycare teacher. R. at 27. Plaintiff protectively filed an application for DIB on February 6, 2014, alleging disability beginning on January 9, 2014, due to rheumatoid arthritis and osteoarthritis. R. at 20, 154-57, 178. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 68-92, 95-99. On May 9, 2016, ALJ Raghav Kotval held a hearing in Baltimore, Maryland, where Plaintiff and a vocational expert ("VE") testified. R. at 34-67. On June 29, 2016, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of January 9, 2014, through the date of the decision. R. at 17-33. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on June 6, 2017. R. at 1-6, 149-53, 239-41. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On July 11, 2017, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

# II

## Summary of Evidence

### A. Plaintiff's Testimony

The ALJ reviewed Plaintiff's testimony in the ALJ's decision:

> [Plaintiff] noted that she was 325 pounds, at 5'7". She is left-handed. She and her husband live with her in-laws. The house has a staircase that she uses about three times per day. She can drive a car for 45 minutes to an hour. Her mother-in-law drove her to the hearing. [Plaintiff] took some college courses. She has past work as a certified nursing assistant and as a geriatric nursing assistant. She obtained certifications in both areas, and also has a certification to work at day cares and pre-schools. She testified that she stopped working in 2014 because she was diagnosed with Rheumatoid Arthritis and was experiencing significant pain. Her pain started in her hips, especially her right hip. She continued her care with her primary care doctor, Dr. Mata, who gave her infusions. They were helpful. She can no longer afford the infusions and they are no longer covered by insurance. Her husband helps with activities of daily life, such as dressing, because of her hand cramps. She lies down three or four hours out of an eight hour day. She stated that she is easily distracted because of her pain. She does not have a lot of energy. She can alternate between sitting and standing for about three hours and then needs to lie down for about the same amount of time. She does not use a computer. She takes Lexapro for depression. It is prescribed by her primary care provider. She does not see a psychologist or psychiatrist.

R. at 24-25; *see* R. at 41-49, 51-60.

### B. VE Testimony

The VE testified that a hypothetical individual with the same age, education, and work experience as Plaintiff and with the residual functional capacity ("RFC") outlined below in Part III could not perform Plaintiff's past work but could perform the unskilled, sedentary jobs of document preparer, addresser, or order clerk.[3] R. at 62-63. An individual who could not stoop

---

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in

or who needed to lie down for two hours a day could not engage in competitive employment. R. at 64, 66. An individual missing more than twelve to fifteen days at work annually because of unscheduled absences would not be employable. R. at 66. To maintain employment, an individual would need to be productive at least 85% of the time on the job. R. at 66. With the exception of her testimony regarding a sit-stand option, the VE's testimony was consistent with the *Dictionary of Occupational Titles*.[4] R. at 64-65.

## III

### Summary of ALJ's Decision

On June 29, 2016, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of January 9, 2014; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a document preparer, addresser, or order clerk. R. at 22-28. The ALJ thus found that she was not disabled from January 9, 2014, through the date of the decision. R. at 28.

---

carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

In so finding, the ALJ found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] can occasionally lift, carry, push or pull 10 pounds and can frequently lift, carry, push or pull less than 10 pounds; can sit for six hours at a time, can stand and walk for up to two hours for one hour at a time; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; can frequently be exposed to unprotected heights and moving mechanical parts; can occasionally be exposed to weather, [humidity] and wetness, and never to extreme cold; and can have occasional exposure to vibration.

R. at 23-24. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 25.

The ALJ considered the opinion evidence and, without explanation, gave "great weight" to the opinions of the state agency medical consultants, although the ALJ gave "additional modifications based on new evidence that has been submitted since the opinion was [sic] written." R. at 26 (citing R. at 68-76, 78-87). The ALJ also gave "great weight" to the opinion of Dr. Wilfredo Gamez, a consultative examiner, because his "findings are supported by the contemporaneous medical records, as well as [his] own exam of [Plaintiff]." R. at 26 (citing R. at 313-19). The ALJ gave "little weight" to the opinions of Drs. Michael Freedman and Matthew Malta, Plaintiff's treating sources. R. at 26 (citing R. at 320-23, 407-17). The ALJ found that Dr. Malta "listed many manipulative and environmental restrictions, but did not list specific limitations in those areas. He indicated that [Plaintiff] could never do anything [sic] postural activities except climb. Such a limitation is not supported by the medical evidence or [Plaintiff's] description of her daily activities." R. at 26. The ALJ found that Dr. Freedman's

5

opinion that Plaintiff "has marked and moderate functional limitations stemming from mental health impairments" was "not documented anywhere in the record" and that Dr. Freedman "is not a psychiatrist or other specialist in the area of mental health." R. at 26 (citing R. at 407-09). As for Dr. Freedman's opinion regarding Plaintiff's physical impairments, the ALJ noted the doctor's opinion that Plaintiff "could only lift and carry five pounds and could never engage in any postural [sic] except occasionally climbing." R. at 26 (citing R. at 410-17). The ALJ found, however, that Plaintiff was "able to drive and engage in other daily activities that would require engaging in at least some of those postural activities." R. at 26. "There is not objective evidence to support limitations beyond those of the RFC." R. at 26.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124

6

S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to

differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

VI

**Discussion**

Plaintiff contends that the ALJ failed to give proper weight to her treating physicians' opinions. Pl.'s Mem. Supp. Mot. Summ. J. 7-9, ECF No. 13-1. She also asserts that the RFC presented by the ALJ to the VE was legally insufficient. *Id.* at 10-11. For the reasons discussed below, the Court remands this case for further proceedings.

"When evaluating conflicting medical opinion evidence, an ALJ generally must accord more weight to the medical opinion of an examining source than to that of a nonexamining source." *Testamark v. Berryhill*, __ F. App'x __, No. 17-2413, 2018 WL 4215087, at *2 (4th Cir. Aug. 31, 2018) (per curiam) (citing *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 268 (4th Cir. 2017); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) (2018)). "[T]he ALJ is required to give 'controlling weight' to opinions proffered by a claimant's treating physicians so long as the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]'" *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (alterations in original) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)).

If the ALJ does not give controlling weight to a treating source's opinion, "the ALJ must consider a nonexclusive list of factors to determine the weight to be given all medical opinions of record: (1) examining relationship; (2) treatment relationship; (3) supportability of the source's opinion; (4) consistency of the opinion with the record; and (5) specialization of the source." *Testamark*, 2018 WL 4215087, at *2 (citing *Brown*, 873 F.3d at 268; 20 C.F.R.

10

§§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) (2018)). "An ALJ must include 'a narrative discussion describing how the evidence supports' his 'explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations.'" *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018) (alteration in original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 190 (4th Cir. 2016). An ALJ may

> credit the opinion of a non-treating, non-examining source where that opinion has sufficient indicia of "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion."

*Id.* (quoting *Brown*, 873 F.3d at 268).

Here, as discussed above, the ALJ found that Plaintiff's daily activities belied her postural limitations as opined by Dr. Freedman because she was "able to drive and engage in other daily activities that would require engaging in at least some of those postural activities." R. at 26. The ALJ also found that Dr. Malta's opinion that Plaintiff could perform no postural activities other than climbing was "not supported by the medical evidence or [Plaintiff's] description of her daily activities." R. at 26. The ALJ further found that Dr. Gamez's findings were "supported by the contemporaneous medical records, as well as [his] own exam of [Plaintiff]." R. at 26.

The ALJ noted, however, that Plaintiff's "medications and pain may cause distractions and difficulty staying on task." R. at 23 (citing R. at 203-10). In fact, Plaintiff reported that she could only lift five pounds and that she could not sit, stand, or walk for more than thirty minutes at a time. R. at 208. She needed to rest for fifteen minutes after walking for thirty minutes. R. at 208. She could not sit for more than thirty minutes without experiencing pain. R. at 203. According to Plaintiff, she could not lift, bend, or stoop. R. at 203, 209. When performing

11

housework, Plaintiff's husband helped her with lifting and carrying items. R. at 205. Plaintiff also testified at the hearing that, on a good day, she had to lie down for two to three hours. R. at 56. Remand is warranted here because "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods*, 888 F.3d at 694 (citing *Brown*, 873 F.3d at 263). Further, "even though the ALJ had recounted various medical evidence earlier in [the ALJ's] opinion," the ALJ's explanation that Dr. Gamez's findings were "supported by the contemporaneous medical records" (R. at 26) is insufficient. *Id.* at 695 (citing *Monroe*, 826 F.3d at 191). The ALJ also did not consider the supportability of the state agency medical consultants' opinions, the consistency between these opinions and the record as whole, and the consultants' specialization. *See id.* Finally, the ALJ failed to explain how, despite Plaintiff's limitations, she could remain on task or be productive for at least 85% of a workday. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (remanding because, *inter alia*, ALJ did not build accurate and logical bridge between claimant's moderate difficulties in various functional areas and ALJ's finding that claimant would not be off task more than 10% of workday); *Carter v. Berryhill*, No. 2:17-CV-04399, 2018 WL 4169108, at *3 (S.D.W. Va. Aug. 30, 2018) (remanding because ALJ "did not build a bridge from the evidence regarding [the claimant's] limitations to the conclusion that she would be off-task fifteen percent (15%) of the day, in addition to regular breaks").

In short, an ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods*, 888 F.3d at 694 (alteration in original) (quoting *Monroe*, 826 F.3d at 189). Because the ALJ's failure to do so in this case constitutes reversible error, the Court remands this case under the fourth sentence of 42 U.S.C. § 405(g) for further proceedings. *See Lewis*, 858 F.3d at 868.

## VII

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 14) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 13) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: September 24, 2018 /s/
Thomas M. DiGirolamo
United States Magistrate Judge